# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **P.L. and A.W.**

**No. 16-0649** (Mercer County 15-JA-138-DS & 15-JA-139-DS)

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.L., by counsel David B. Kelley, appeals the Circuit Court of Mercer County's June 1, 2016, order terminating her parental rights to P.L. and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the termination of petitioner's parental rights. The guardian ad litem ("guardian"), Michael Magann, filed a response on behalf of the children in support of termination. On appeal, petitioner alleges that the circuit court erred when it failed to make appropriate findings of fact in its dispositional order and terminated her parental rights without first granting her an additional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition against the following individuals: petitioner, mother of then three-year-old P.L. and then one-year-old A.W.; the biological father of P.L., B.L.; the biological father of A.W., Z.W.; and V.K., the individual who had custody of the children at the petition's filing. According to the petition, the DHHR first became involved with petitioner when it received a referral of child neglect in June of 2015. A Child Protective Services ("CPS") worker visited the home, but no one was present at the time. The worker inspected the home and found the outside of the home to be in "deplorable" condition. According to the worker, the front porch was beginning to cave in; the back porch was covered with dog feces, trash, and various other items; and the yard contained garbage and diapers strewn throughout. CPS contacted petitioner and she informed them that she moved to the State of North Carolina. As such, the DHHR made a referral to the North Carolina Department of Social Services and closed petitioner's case.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

However, two months later the DHHR received a report that petitioner and her children were living in a tent in the woods in Princeton, West Virginia, and that petitioner was "actively under the influence" in the children's presence. The DHHR made two attempts to contact petitioner, without success, before it received another referral that petitioner had relocated. Eventually, the DHHR arrived at petitioner's new location and found the children with V.K., an individual whose parental rights to his own children had been involuntarily terminated. The individuals appeared to be living in a tent, and several beer cans were observed outside the tent. P.L. had multiple scratches on his legs and what appeared to be a large, fading bruise on his cheek. A.W. had multiple bug bites covering her body, severe diaper rash, and appeared to be in pain due to an ear ache. Petitioner was not in the area, but later advised the police, by telephone, that she was in Beckley, West Virginia. Eventually police located petitioner and brought her to the tent. Although she denied any drug use, CPS observed a recent track mark on her arm. At that point, petitioner admitted to snorting Dilaudid and Lortab. V.K. further indicated that petitioner had intravenously abused Dilaudid two days earlier. Petitioner admitted that she was staying with her boyfriend and had left her children with V.K. for periods of time. Petitioner also admitted to prostituting to support her drug habit. As such, the children were placed in the DHHR's custody.

In October of 2015, the circuit court held an adjudicatory hearing, during which it found petitioner to be an abusing parent based upon her drug use and the conditions to which she subjected the children. It was also determined that the children suffered multiple health issues. A.W. was diagnosed with bronchitis and an umbilical hernia, while P.L. was believed to have a facial contusion and was suffering from severe headaches. P.L. was also diagnosed with a heart murmur. The circuit court heard further evidence that P.L. disclosed that petitioner hit him on the head, his "daddy" kicked him in the face, and petitioner gave him beer at night to help him sleep. The circuit court then granted petitioner a post-adjudicatory improvement period to address her drug problems.

In December of 2015, petitioner entered a detoxification program at the "Mother's Program" as part of her improvement period. After completing detoxification, but before undergoing treatment, petitioner left the premises and was found drinking alcohol with a peer. Although the Mother's Program allowed her to remain in treatment, petitioner opted not to do so and her whereabouts were unknown for some time. When petitioner reappeared, the DHHR secured her placement in another treatment program and continued to provide services to assist with her drug problem. However, petitioner later left that program and the DHHR was unable to maintain regular contact with her thereafter. In fact, petitioner's whereabouts were unknown for so long that her mother contacted CPS and indicated that she was so worried about petitioner that she was going to file a missing person report with law enforcement. Thereafter, in April of 2016, the DHHR filed a motion to terminate petitioner's parental rights upon allegations that she failed two attempts at substance abuse treatment and was missing throughout much of her improvement period.

In May of 2016, the circuit court held a dispositional hearing. During the hearing, the circuit court heard from multiple service providers who testified regarding petitioner's failure to correct the conditions of abuse and neglect. According to one provider, petitioner was not motivated to correct these issues, as evidenced by the fact that she voluntarily left two treatment programs after approximately one week. According to this provider, petitioner returned to

2

substance abuse when she left these programs and had recently been seen with V.K. A service provider who supervised visitation testified that petitioner never provided for the children during visits and also refused to change diapers unless directly instructed to do so. Petitioner testified and indicated that her service providers could not reach her because someone stole her phone. The circuit court recessed to allow petitioner to submit to a drug screen, but petitioner indicated that she could not produce a sample. Accordingly, the circuit court noted that it believed this to be indicative of the fact that petitioner would fail the drug screen. The circuit court found that the guardian's previously submitted report succinctly summarized the case and adopted the same in regard to disposition. The circuit court then terminated petitioner's parental rights. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Upon our review, the Court finds no reversible error below. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). On appeal, petitioner claims that the circuit court erred in failing to include specific findings of fact and conclusions of law in its dispositional order. However, based upon the specific facts of this matter, the Court finds that the lack of findings of fact and conclusions of law as alleged by petitioner do not constitute a substantial disregard or frustration of the applicable rules such that vacation of the dispositional order is required.

Both West Virginia Code § 49-4-604 and Rule 36 of the Rules of Procedure for Child Abuse and Neglect Proceedings require the circuit court to set forth a sufficient factual basis for the termination of a parent's parental rights. Specifically, West Virginia Code § 49-4-604(b)(6) predicates termination of a parent's parental, custodial, and guardianship rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that such termination is "necessary for the welfare of the child . . . ." Similarly, Rule 36(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a circuit court at disposition to "make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va. Code § 49-4-604." The record on appeal is clear that the evidence below overwhelmingly supported termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(1), there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning[.]

The evidence below established that petitioner not only continued to abuse drugs throughout the proceedings, but she also failed to follow through with the recommended treatment for her substance abuse issues. Specifically, the DHHR obtained petitioner placement in two separate drug treatment facilities, but she voluntarily left both facilities without completing treatment. Thereafter, her whereabouts were unknown for extended periods during the proceedings. As such, it is clear that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. Moreover, it is clear that the children's welfare required termination of petitioner's parental rights. According to West Virginia Code § 49-4-604(b)(6), circuit courts are required to terminate parental rights upon these findings.

Further, the Court finds no error in regard to petitioner's argument that the circuit court should have granted her an additional improvement period. It is important to note that it is unclear whether petitioner's claim relates to an extension of her post-adjudicatory improvement period or an improvement period as disposition, as petitioner cites the standard of proof necessary for obtaining an extension of an improvement period but also argues that the circuit court should have granted her "an additional improvement period." As such, we will address both possibilities.

In support of her argument, petitioner alleges that she substantially complied with the terms of her post-adjudicatory improvement period, as evidenced by her acknowledgment of her substance abuse, and her participation in hearings and multidisciplinary team meetings. These facts, however, do not constitute substantial compliance with the terms of her post-adjudicatory improvement period. Moreover, petitioner's argument ignores the fact that the main condition of abuse and neglect, namely her substance abuse, continued unabated during the proceedings.

We have previously held that

"[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child[ren]." Syllabus Point 6, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 4, *In re Faith C.*, 226 W.Va. 188, 699 S.E.2d 730 (2010). Based upon the evidence below, the Court finds that petitioner failed to make sufficient improvement to justify the return of the children to her care. In addition to her voluntary exit from two substance abuse treatment programs, the evidence shows that petitioner indicated she could not provide a sample for a drug screen when ordered to do so at disposition. As such, it is clear that petitioner also failed to make sufficient progress in regard to correcting her substance abuse issues such that the circuit court could return the children to her care.

Moreover, petitioner was not entitled to an additional improvement period as disposition because of her continued drug abuse. According to West Virginia Code § 49-4-610(3)(D), a circuit court may only grant an improvement period as disposition when the parent has already received an improvement period if the parent "demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances." The record here is clear that petitioner failed to satisfy this burden. While it is true that petitioner did attend some hearings and meetings, such attendance does not constitute a substantial change in circumstances in light of her continued substance abuse. For these reasons, we find that petitioner was not entitled to an extension to her post-adjudicatory improvement period or an improvement period as disposition.

For the foregoing reasons, we find no error in the circuit court's June 1, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 21, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING**:

Justice Robin Jean Davis